## C. ALICE MILLER v. HELEN POULIOT.[1]

February 26, 1937.

No. 31,168.

*Norton & Norton,* for appellant.
*Charles M. Bank,* for respondent.

HILTON, JUSTICE.

Appeal from a judgment of the municipal court of Hennepin county, entered in favor of defendant in an action brought by plaintiff to recover damages for loss sustained by defendant's alleged breaking of a written lease.

Plaintiff let some improved real estate to defendant and her husband, the latter now being deceased, for the period of one year at the rate of $65 monthly. After remaining in possession about six months defendant moved out, and this action was brought for the rent remaining unpaid at the end of the term. As a defense it was alleged that the premises were untenantable.

The building in question, apparently quite old—the testimony indicating it to be over 24 years of age—was of the multiple type, two stories in height. The second floor contained four apartments.

[1]Reported in 271 N. W. 818.

Three of these had two means of egress each, but the fourth had but one.

The housing act, 1 Mason Minn. St. 1927, § 1630-44, also made a part of the Minneapolis charter, provides:

"Every multiple-dwelling *hereafter erected* exceeding one story in height and every building occupied above the first floor as a dwelling, shall have at least two independent ways of egress which shall be located remote from each other, * * *." (Italics ours.)

The Minneapolis building code provides that all dwellings shall be maintained "as required by the Housing Act." Relying on both the code and the housing act, the lower court, following the decision of Leuthold v. Stickney, 116 Minn. 299, 133 N. W. 856, 39 L.R.A.(N.S.) 231, Ann. Cas. 1913B, 405, which held that a landlord cannot recover rent for premises leased in violation of the law, found for the defendant.

The section above quoted is not applicable for it was enacted in 1917, whereas the building in question was constructed prior thereto. The act is specifically limited to dwellings erected after its enactment. The Minneapolis building code merely incorporated by reference the provisions of that act, so adds nothing to it.

Another part of the housing act, 1 Mason Minn. St. 1927, § 1630-107, provides:

"Every multiple-dwelling exceeding one story in height shall have at least two independent ways of egress constructed and arranged as provided in section sixty-one of this act [1 Mason Minn. St. 1927, § 1630-44, heretofore quoted]. In the case of multiple-dwellings erected prior to the passage of this act where it is not practicable to comply in all respects with the provisions of that section, the inspector of buildings shall make such requirements as may be appropriate to secure the proper means of egress from such multiple-dwellings for all the occupants thereof. * * *"

That appears to be the only section at all applicable to the facts of this case. Defendant obviously was liable for the rent unless a valid affirmative defense could be proved. The burden was on her

to prove either that it was "practicable" to comply with the provisions of § 1630-44 or that the building inspector had made other requirements with which there had been no compliance on the part of the plaintiff. Neither of those situations was proved. The building inspector was placed on the witness stand, but there was no attempt to discover what "requirements," if any, had been made by him, although there was an indication that the means of egress provided were not satisfactory.

There was evidence that the plumbing in the building was in an unsanitary condition and that the house had been "blue carded" (*i. e.,* marked as being in an unhealthful condition) by the health department; also that the furnace was so defective as to allow the escape of gas fumes. As to these matters, however, it appears that defendant was bound by the terms of the lease to repair and keep the plumbing and the furnace in good order; therefore the situation furnished no justifiable grounds for the breaking of the lease by defendant. The only meritorious defense would be proof that plaintiff was guilty of a violation of the housing act. There was no evidence from which that could be determined.

The judgment is reversed and the case remanded for further proceedings if the defendant be so advised. See Township of Canosia v. Township of Grand Lake, 80 Minn. 357, 83 N. W. 346; *Id.,* 87 Minn. 347, 92 N. W. 215.

Reversed.

Mr. Chief Justice Gallagher, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.